UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF WISCONSIN

---

In re:                                                                      Case Number: 08-15291-13

ANTHONY THOMAS DEVINE
and MELISSA LEE DEVINE,

Debtors.

---

## DECISION ON DEBTORS' COUNSEL'S APPLICATION FOR COMPENSATION

### BACKGROUND

The Debtors, Anthony and Melissa Devine, filed a voluntary Chapter 13 petition on October 7, 2008. Their plan was confirmed on March 4, 2009. At the present time the remaining payments due under the plan total approximately $2,400.88.

On February 15, 2013, Debtors' counsel, Daniel R. Freund, filed an Application for Approval, Allowance and Payment of Compensation and Reimbursement of Expenses as an Administrative Creditor ("Application"). Mr. Freund seeks a total of $3,689.91 for 17.05 hours of work, including $230 in fees related to prosecuting the Application.

The Chapter 13 Trustee agreed that the amounts were reasonable but objected to their allowance and payment on the theory that the fees sought by Mr. Freund were not for work related to the bankruptcy case. Specifically, the Trustee alleged that the Application sought payment for less than an hour of

work directly related to the bankruptcy case. He argued that the balance was for work done on behalf of the Debtors in state court.

On March 21, 2013, the Court held a hearing on the Trustee's objection. The Court approved the fee request and found that the time worked and rate charged were both reasonable, but took the question of whether to allow and authorize payment from the bankruptcy estate under advisement. The parties submitted briefs.

## FINDINGS OF FACT

Whether the fees should be allowed depends in large part on the facts. Unfortunately, there is a paucity of facts before the Court concerning the services for which Mr. Freund seeks payment. What is known is this: The fees at issue were generated by Mr. Freund in the course of defending the Debtors in two state court actions ("State Court Actions," or "Bauer Matters"). No pleadings from the State Court Actions have been filed in the bankruptcy case. The limited information that is available has been provided in the briefs.

Mr. Freund describes the State Court Actions as small claims actions filed post-petition by Rick Bauer, a scheduled creditor, for debts relating to automobile restoration work. In his response to the Trustee's objection, Mr. Freund notes that a "substantial portion of the state court litigation consisted of Mr. Devine's assertion of the bankruptcy automatic stay," but he provides no additional detail.

In the first case, *Bauer v. Devine*, Case No. 12 SC 707, the Dunn County Circuit Court apparently found that Mr. Devine was liable to Mr. Bauer (and Mr. Bauer's wife) in connection with a contract relating to the restoration of a 1969 Dodge Daytona. It appears there was a "time and materials" contract between Mr. Devine and Mr. Bauer and that at least a portion of the claim arose pre-petition. Mr. Bauer appears on the Debtors' Schedule G as a party to an executory contract. Schedule G states that the contract was for "[b]ody restoration of a 1969 Dodge Daytona. Owner will owe for materials. Labor has been paid." Mr. Bauer is listed on the Debtors' Statement of Financial Affairs as the owner of the Daytona. Presumably, although it is not explicit, Mr. Bauer's suit regarding the Daytona sought to recover the amounts he paid for work that was not done. Although the suit was not filed until after the Debtors filed bankruptcy, Mr. Freund indicates that the Debtors' position was that the debt was a continuation of a pre-petition contract. Evidently the state court disagreed and concluded that at least a portion of the debt resulted from a post-petition contract. Although the Bauers sought $6,243.21, the court only awarded $2,000.

In the second case, *Bauer v. Devine*, Case No. 11 SC 812, the Dunn County Circuit Court ruled against the Debtors a second time. This matter related to a post-petition contract for another vehicle and involved a $1,598.50 judgment in favor of Mr. Bauer against Mr. Devine. The Bauers then sought to garnish Mr. Devine's wages.

Mr. Freund notes that he did not appear until after the state court had found Mr. Devine liable and the Bauers had filed a garnishment action to collect the judgment. Efforts to set aside the underlying judgment were unsuccessful. Although apparently there was also a response filed in connection with the garnishment, the outcome of that matter is not in the record. It does appear that, whatever the outcome, the Debtors have continued to make their plan payments.

Mr. Freund acknowledges that both of the Bauer Matters could have been removed to the bankruptcy court. The decision not to do so was intended to minimize expenses. Mr. Freund indicates that he initially expected only "a single appearance followed, perhaps, by one brief." Unfortunately, the litigation did not progress as smoothly as expected and Mr. Freund's fees wound up higher than anticipated. His bills show that over the course of approximately five months, Mr. Freund ultimately worked 17.05 hours on behalf of the Debtors. Of these hours, there is not a specific itemization of the portion spent on the State Court Actions. Many of the billing entries contain specific references to the cases—or, at least, references that one may fairly assume are to the State Court Actions:

- 9/12/2012 — Receive call on a priority basis from and confer with AD at 9 a.m. re OTSC hearing at 11 a.m. in Bauer v. Devine, 11CV812 (Dunn County), garnishment in same case, et cetera (gave client case to cite) — 0.25 hours

- 9/27/2012 — Receive and review documents from two Bauer cases; Review status on CCAP; Prepare for call, place call to and leave message

for client. Receive call on a priority basis from and confer with client re Dunn County cases facts and issues — 0.25, 0.20 hours

- 9/28/2012 — Begin draft of motion to dismiss in 2012 case; Begin draft of motion to reopen in 2011 case; Prepare for call, place call to and confer with client for facts; Review, edit and revise motions; Prepare for call, place call to and confer with client to confirm facts; Review, edit and revise motions; Draft letters to clerk re motions — 1.40 hours

- 10/12/2012 — Prepare for call, place call to and leave message for clerk re status of motion to reopen 2011 case; Receive call on a priority basis from and confer with clerk re has motion, will set hearing — .05, .15 hours

- 10/19/2012 — Receive and review notices of adjourned hearings in state court matters; Draft letter to client to gather documentary evidence — .25 hours

- 10/25/2012 — Receive and review Bauer requests for telephonic appearance — .15 hours

- 11/19/2012 — Receive and review Bauer replies; Prepare for call, place call to and leave message for AD; Draft email to MD to have AD call; Receive call on a priority basis from and confer with AD re will stop by this afternoon; Meet and confer with AD re client documents, Bauer filing, et cetera — .30, .05, .50 hours

- 11/20/2012 — In depth analysis of Bauer 11 SC 812; Analysis of law re unauthenticated pleading; Draft notes for hearing; Prepare exhibit; In depth analysis of Bauer documents re 12 SC 707; Draft hearing notes; Prepare exhibit — .80, .60 hours

- 11/21/2012 — Final preparation for and representation of client at state court hearings — 1.45 hours

- 11/26/2012 — Review state court files re hearing and brief dates, et cetera; Draft proposed scheduling order; Draft letter to clerk re same; Calendar appearances and deadlines — .40 hours

- 12/1/2012 — Saturday - Receive and review signed scheduling order; Draft letters to Bauers re same — .25 hours

- 12/10/2012 — Receive and review Bauer brief; Analysis of law re same; Review file re facts; Draft brief in support of motion — 2.25 hours

- 12/11/2012 — Analysis of state court law re violation of stay is void; Review, edit and revise brief; Draft letter to clerk re same — .90 hours

- 1/14/2013 — Receive and review Bauer request to appear by phone; Receive and review electronic notice of court granting request — .15 hours

- 1/22/2013 — Prepare for trial/hearing in 11 SC 812 case; Update analysis of law re same — .50 hours

- 1/23/2013 — Final preparation for and representation of client at reopen hearing — 2.0 hours

- 1/28/2013 — Prepare for call, return call to and leave message for clerk re 707 case; Receive call on a priority basis from and confer with clerk re reason for delay re court ruling (snafu in clerk's office) — .05, .15 hours

The entries that are more or less explicitly linked to the State Court Actions thus account for roughly thirteen hours. Based on the Application, it appears likely that all of the time was related, directly or indirectly, to the State Court Actions.

## DISCUSSION

Section 330(a)(4)(B) of Title 11 permits the award of compensation to professionals like Mr. Freund who are employed by debtors in Chapter 13 cases.[1] *Lamie v. United States Tr.*, 540 U.S. 526, 537, 541, 124 S. Ct. 1023, 157

---

[1] Section 330 states in relevant part:

(a)(1) After notice to the parties in interest . . . the court may award to a . . . professional person employed under section 327. . .

    (A) reasonable compensation for actual, necessary services rendered by
(continued...)

L. Ed. 2d 1024 (2004); *Law Offices of David A. Boone v. Derham-Burk (In re Eliapo)*, 468 F.3d 592, 602 (9th Cir. 2006). That section permits the award of fees for services rendered in connection with the bankruptcy case if the court

---

[1](...continued)
the . . . professional person, or attorney and by any paraprofessional person employed by any such person; and

    (B) reimbursement for actual, necessary expenses.

. . .

(3) In determining the amount of reasonable compensation to be awarded . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

. . .

    (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

. . .

(4)(A) Except as provided in subparagraph (B), the court shall not allow compensation for—

    (i) unnecessary duplication of services; or

    (ii) services that were not—

        (I) reasonably likely to benefit the debtor's estate; or

        (II) necessary to the administration of the case.

(B) In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

11 U.S.C. § 330.

determines that the services were sufficiently beneficial or necessary to the debtor in light of the "other factors" listed in section 330. 11 U.S.C. § 330(a)(4)(B). Relevant here, the Court should permit fees if the "services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title," 11 U.S.C. § 330(a)(3)(C), but not if the services were not "reasonably likely to benefit the debtor's estate" or "necessary to the administration of the case," 11 U.S.C. § 330(a)(4)(A). *See, e.g., In re Ryan*, 82 B.R. 929, 931-32 (N.D. Ill. 1987); *In re Spanjer Bros.*, 191 B.R. 738, 748 (Bankr. N.D. Ill. 1996).

The first element to consider, then, is the benefit and necessity of the services rendered by Mr. Freund. Mr. Freund's position is that his involvement in the first state court action was essential to prevent the Bauers from obtaining a judgment, the payment of which he says could be entitled to administrative expense priority. According to him, an additional administrative expense posed the risk of scuttling the Debtors' plan, so he insists it was appropriate to intervene in order to prevent the Debtors from suffering a failed bankruptcy.

Mr. Freund also contends that his involvement in the second action was essential to prevent the Bauers from intercepting Mr. Devine's paychecks. Mr. Freund warns that the prospect of garnishment threatened the Debtors' ability to continue making plan payments, with obvious potential repercussions for the Debtors personally.

The second question is whether the services were necessary to the administration of the Debtors' bankruptcy case, or beneficial at the time they were rendered toward completion of the bankruptcy case. Though the focus here is the effect of Mr. Freund's services on the Debtors' case, and not the Debtors themselves, the same rationale applies. A post-petition debt in one action and the prospect of an adverse outcome in the other action both presented risks to the viability of the bankruptcy plan.

There can be no argument that safeguarding the Debtors' ability to make plan payments and protecting the feasibility of the Debtors' plan are both endeavors that benefit the Debtors personally. Likewise, up to a point, the attempt to deal with the State Court Actions was both necessary to the administration of, and beneficial toward the completion of, the plan. Lawsuits do not resolve themselves, even if they are subject to the automatic stay, so clearly some amount of Mr. Freund's attention was required after the suits were filed. Further, to the extent it appears there may have been violations of the stay in the State Court Actions, his intervention was justified to a point.

Unfortunately, Mr. Freund sought to achieve these ends by taking a calculated risk that had unexpectedly expensive consequences. He concedes that the matters could have been removed to the bankruptcy court, but indicates that his hope was to resolve them more quickly and cheaply in the state court. The Court does not quarrel with the logic of this choice, but notes

that this course of action entailed the risk of both prolonged litigation and an adverse judgment—consequences that ultimately came to pass.

Mr. Freund states that, at least in the first of the actions, whether the automatic stay applied was at the heart of his defense. In this context, that argument likely entailed a core bankruptcy proceeding under 28 U.S.C. § 157(b)(2). Presumably the second action would also have implicated the automatic stay and a core proceeding.[2] Nevertheless, Mr. Freund opted to make his arguments before the state court. In doing so, he ran the attendant risk that a state court that is less familiar with the Bankruptcy Code may not be as well positioned as the bankruptcy court to dispose of these core bankruptcy questions.

The Court cannot conclude that the unexpected increase in fees that resulted from the Debtors' decision to proceed in state court was necessary or beneficial to the Debtors in connection with their bankruptcy case within the meaning of 11 U.S.C. § 330(a)(4)(B). There was clearly some benefit to the estate that resulted from Mr. Freund's representation of the Debtors, and the Court is not inclined to deprive Mr. Freund of the fees that he incurred in a reasonable attempt to enforce the automatic stay while minimizing costs. Therefore, he is entitled to some payment from the bankruptcy estate for

---

[2] Mr. Freund does not seem to dispute that the Debtors' income was property of the estate protected by the automatic stay under 11 U.S.C. § 1306(a). As such, the garnishment action could have been suspended merely by asserting the existence of the automatic stay.

Case 1-08-15291-cjf    Doc 97    Filed 07/15/13    Entered 07/15/13 12:36:30    Desc Main
                        Document      Page 11 of 12

making this effort—for the "single appearance followed, perhaps, by one brief" that he anticipated when he opted not to remove the matters. But the Court is not prepared to award the additional fees that ensued when the calculated risk went awry.

Based on the invoice submitted by Mr. Freund, it appears that roughly six hours were spent in direct preparation for the Debtors' first state court hearing and working on the Debtors' brief.[3] This is the portion of the fees that will be allowed. The Court is not persuaded that any more of the 17 hours listed on the invoice were sufficiently connected to the initial cost-saving effort envisioned by Mr. Freund to warrant payment by the bankruptcy estate under the terms of 11 U.S.C. § 330(a)(4)(B). As such, Mr. Freund's application for allowance is granted with respect to six hours. His request for allowance of the remaining 11.05 hours is denied.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

---

[3] The Court specifically refers to the entries on 9/28/2012, 11/21/2012, 12/10/2012, and 12/11/2012 that are set forth above and make clear mention of activities related to the first hearing and to the brief.

A separate order consistent with this decision will be entered.

Dated: July 15, 2013

BY THE COURT:

/s/ Catherine J. Furay

_____
Hon. Catherine J. Furay
U.S. Bankruptcy Judge